UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS FERRIS,<br><br>                    Plaintiff,<br>v.<br><br>EYE CARE FOR THE ADIRONDACKS, P.C., CATARACT CENTER FOR THE ADIRONDACKS, LLC, ROY AROGYASAMI, and JOSEPH RINI,<br><br>                    Defendants. | Case No. **8:23-cv-284 (FJS/DJS)**<br><br>**COMPLAINT** |

Plaintiff Thomas Ferris ("Mr. Ferris" or "Plaintiff"), by and through his attorneys, Kent, Beatty & Gordon, LLP, for his complaint against Defendants Eye Care for the Adirondacks, P.C. ("ECA"), Cataract Center for the Adirondacks, LLC ("CCA"), and Drs. Roy Arogyasami and Joseph Rini ("Defendants"), alleges as follows:

## NATURE OF THE ACTION

1. This is an action to recover damages for breach of contract and wrongful termination. In the spring of 2014, Mr. Ferris entered into a written agreement with Defendants to serve as Executive Director of their ophthalmology practice (the "Agreement"). The initial term of the Agreement was two years and, unless terminated, the Agreement automatically renewed for successive two year terms. Most recently, the Agreement renewed on June 1, 2022, for a term expiring on May 31, 2024. The Agreement permitted termination only "for cause" as defined in the Agreement, which included "engag[ing] in fraud or dishonesty adversely affecting the Employer."

2. Mr. Ferris excelled as Executive Director and his performance was universally praised by his co-workers and superiors. For instance, his August 2022 performance review

gushed that Mr. Ferris was "an exceptional leader" who "leads with honesty and integrity." Yet, on or about December 9, 2022, Defendants suspended Mr. Ferris with no explanation whatsoever. Then, on January 5, 2023, Defendants purportedly terminated Mr. Ferris' employment "for cause," but provided no explanation whatsoever of what Ferris allegedly did that constituted "fraud or dishonesty adversely affecting [Defendants]." Later, when pressed by Mr. Ferris' counsel, they claimed that his "fraud or dishonesty" consisted of not acting quickly enough to address a mold problem in one of the offices. In the words of Defendants' counsel weeks after Mr. Ferris' termination: "Mr. Ferris failed to properly address a mold issue regarding a leaky window in one of the facilities."

3. Defendants had no basis whatsoever for terminating Mr. Ferris for fraud or dishonesty and allegedly failing to address a leaky window (which is untrue) represents nothing more than an *ex post facto* bad faith pretext. Accordingly, Mr. Ferris brings this action to recover the amounts still due to him under the Employment Agreement, which exceed $300,000.00, along with all other remedies to which he is entitled under the New York Labor Law, including liquidated damages and attorneys' fees.

## THE PARTIES

4. Plaintiff Thomas Ferris is a natural person domiciled at 8 Kyra Way, Plains, PA, in Luzerne County, Pennsylvania.

5. Defendant Eye Care for the Adirondacks, P.C. ("Eye Care") is a professional corporation organized under the laws of the State of New York, with its principal place of business at 450 Margaret Street, Plattsburgh, NY, in Clinton County, New York.

6. Defendant Cataract Center for the Adirondacks, LLC ("Cataract Center") is a limited liability company organized under the laws of the State of New York, with a principal place of business at 450 Margaret Street, Plattsburgh, NY, in Clinton County, New York.

7. Upon information and belief, the members of Cataract Center are: Drs. Roy Arogyasami and Joseph Rini. Dr. Roy Arogyasami is a natural person domiciled at 42 Blue Herron Way, Plattsburgh, NY, in Clinton County, New York. Dr. Joseph Rini is a natural person domiciled at 24 Colligan Point Road, Plattsburgh, NY, in Clinton County, New York.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is diversity of citizenship and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

9. Venue is proper in this district because Defendants reside in this district and a substantial part of the events and/or omissions giving rise to the claim occurred in this district.

## FACTS COMMON TO ALL CAUSES OF ACTION

10. In the spring of 2014, Plaintiff and Defendants executed an Employment Agreement whereby Plaintiff agreed to serve as Executive Director for both Eye Care for the Adirondacks and Cataract Center for the Adirondacks, starting on June 2, 2014.

11. The Employment Agreement was amended by written addenda from time to time, most recently on June 1, 2022 (collectively, the 2014 Agreement and the addenda will be referred to as the "Employment Agreement" or "Agreement"). The Employment Agreement, together with the June 1, 2022 addendum, is annexed hereto as Exhibit "1."

12. The Agreement provides for an initial two (2) year term of employment, to be automatically renewed for successive terms of (2) years unless either the Defendants or Plaintiff

gave "contrary written notice to the other not less than ninety (90) days in advance of the date on which the then-current term of this Agreement would otherwise expire" or if the Agreement was "sooner terminated in accordance with the terms and conditions of this Paragraph".

13. The Agreement contemplates termination without cause only for death or permanent disability, and termination "for cause" only in five scenarios: (a) a felony conviction; (b) fraud or dishonesty adversely affecting the Employer; (c) failure, after written notice and a thirty (30) day opportunity to cure, to cure a material shortcoming in connection with Ferris's performance about which he has been given written notice to correct; (d) failure to achieve, in a timely manner and in the Board's reasonable discretion, his written and agreed upon objectives as set forth from time to time by the Board after written notice and a thirty (30) day opportunity to cure; and (e) the violation of any material obligation under this Agreement and failure to cure said violation after written notice and a thirty (30) day opportunity to cure.

14. The provisions of the Employment Agreement trump the provisions of the Employee Handbook.

15. The Employment Agreement was extended for subsequent two-year terms on June 1, 2016, June 1, 2018, June 1, 2020, and, lastly, on June 1, 2022. (For the most recent extension, *see* Exhibit 1.) Thus, the Agreement is currently in effect until at least May 31, 2024.

16. The June 1, 2022 Addendum memorialized Plaintiff's salary for the two-year period starting June 1, 2022 and ending May 31, 2024. Plaintiff's base salary was $184,891.20 and was to increase by no less than three percent (3%) on each anniversary of the Agreement (*i.e.*, on or before June 1, 2023, Mr. Ferris' base salary was to be increased to at least $195,587.93 per

annum).  The Addendum also specified that the 90-day termination clause was to remain in effect, along with all other terms of the Agreement dated May 11, 2014.[1]

17.     In late August 2022, Defendants gathered employee feedback about Plaintiff, which was extraordinarily positive.  The effusive praise Defendants' employees provided included statements that Mr. Ferris was "an exceptional leader" who "leads with honesty and integrity"; "he is fair and communicates well"; "provides honest advice and guidance"; "always looks out for the best interest of the company as well as all of the employees"; "a true gem and asset to this company"; "proactive and always 1 step ahead"; "firm, fair, and flexible"; "very friendly which makes working with him a pleasure.; and his honesty "builds integrity for [the company's] management team".  Defendants' head of Human Resources even noted: "I truly enjoy coming to work every day, and he is a big reason for that."

18.     On or about December 9, 2022, Plaintiff was suspended from his position with pay but without explanation.

19.     On or about December 21, 2022, Plaintiff's suspension was extended, again without providing a reason, despite repeated entreaties as to why.

20.     On or about January 5, 2023, Plaintiff was informed that Defendants were purportedly terminating his employment.  That day, defendants Drs. Roy Arogyasami and Joseph Rini, on behalf of defendant Eye Care, sent Plaintiff a letter to "serve as notice of your immediate termination for cause pursuant to your employment contract dated April 26, 2014, page 2, Section

---

[1] Upon information and belief, the reference to the contract dated "May 11, 2014" is a scrivener's error, and the parties intended to refer to the Agreement executed by Defendants' President on May 1, 2014.

1(b) and all subsequent amendments."[2]  The referenced correspondence is attached hereto as Exhibit "2".

21. Section 1(b) is the "fraud or dishonesty" clause in the five enumerated definitions of cause.

22. Plaintiff has never engaged in any fraud or dishonesty adversely affecting Defendants and, as noted, Defendants had no basis whatsoever for terminating Mr. Ferris for fraud or dishonesty because he allegedly failed to address a leaky window (which is untrue).  This "defense" represents nothing more than an *ex post facto* bad faith pretext for his firing.

23. Upon information and belief, Defendants' counsel invoked Section 1(b) without even having a good faith basis for alleging fraud or dishonesty.  Rather, Defendants chose Section 1(b) because, with the exception of a felony conviction, all of the other definitions of "for cause" required written notice and an opportunity to cure.

24. Defendants never provided Plaintiff with any written notice to cure, as required by the Employment Agreement.

25. At no point up to and including the date of Plaintiff's termination did Defendants provide Plaintiff notice of their intent not to renew the Employment Agreement upon the expiration of the current two-year term.

26. Since Mr. Ferris was wrongfully terminated without cause, Defendants are contractually obligated to continue to pay Plaintiff his salary for the remainder of the current two-year term (*i.e.*, until May 31, 2024), plus all benefits, wage supplements, and other perquisites.

27. Only after Plaintiff's counsel wrote to Defendants on his behalf did Defendants, through counsel, state for the first time that Plaintiff's allegedly fraudulent conduct was his

---

[2] Upon information and belief, the reference to the contract dated "April 26, 2014" is a scrivener's error, and the parties intended to refer to the Agreement executed by Plaintiff on April 28, 2014.

6

purported failure adequately to address an employee's complaint of mold in one of the offices due to a leaky window.

28. Even if true, this would not constitute "fraud or dishonesty" under the terms of the Employment Agreement. Moreover, it is not true, as Plaintiff did timely and sufficiently address the mold issue in one of the offices.

29. Indeed, Defendants' conduct in connection with Plaintiff's purported termination all points to the ineluctable conclusion that Defendants have simply fabricated a nonsensical "justification" for Plaintiff's termination in order to attempt to evade their contractual obligation to compensate Mr. Ferris for the remainder of his two-year term of employment.

## FIRST CAUSE OF ACTION
### (Breach of the Employment Agreement Against ECA and CCA)

30. Plaintiff incorporates by reference the foregoing allegations as if set forth at length herein.

31. Plaintiff entered into the Employment Agreement with Defendants.

32. At all relevant times, the Employment Agreement was a binding contract in full force and effect.

33. Plaintiff performed all of his obligations under the Employment Agreement.

34. Defendants breached the Employment Agreement by terminating Plaintiff without sufficient cause as required by the Employment Agreement and by separating Plaintiff from his employment prior to the expiration of the current two-year term of the Agreement, which runs until May 31, 2024.

35. To the extent that Defendants may later claim an alternative basis for terminating Plaintiff "for cause," Defendants breached the Employment Agreement by failing to provide Plaintiff with the required written notice and opportunity to cure.

36. Defendants' breach of the Employment Agreement has caused damage to Plaintiff in an amount to be determined at trial, but not less than $264,000, plus benefits, wage supplements, and other perquisites, or more than $310,000.

### SECOND CAUSE OF ACTION
**(Violation of New York Labor Law § 193 Against All Defendants)**

37. Plaintiff incorporates by reference the foregoing allegations as if set forth at length herein.

38. Plaintiff is owed wages from January 5, 2023 through May 31, 2024.

39. Defendants have not paid Plaintiff the wages he is owed.

40. Defendants are wrongfully withholding wages owed to Plaintiff.

41. New York Labor Law § 193 prohibits the unauthorized failure to pay wages, benefits or wage supplements, and further provides that "there is no exception to liability under this section for the unauthorized failure to pay wages."

42. Defendants are therefore in violation of New York Labor Law § 193.

43. Defendants Arogyasami and Rini each constitute "employers" for the purposes of New York Labor Law § 193 are therefore personally and jointly and severally liable for the foregoing violations of New York Labor Law § 193.

44. Pursuant to New York Labor Law § 198(1-a), Plaintiff is entitled to the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest, and liquidated damages equal to one hundred percent of the total amount of the wages found to be due.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court issue an Order including the award of:

(A)   Compensatory damages in an amount to be determined at trial, but not less than $310,000;

(B)   Liquidated damages in an amount to be determined at trial of approximately $310,000;

(D)   Pre-judgment and post-judgment interest;

(E)   Reasonable attorneys' fees and costs; and

(F)   Such other and further relief as the Court deems just and proper.

Dated: New York, New York
       March 2, 2023

KENT, BEATTY & GORDON, LLP

*Alex T. Paradiso*
Alex T. Paradiso
(Bar Roll # 517002)
Eleven Times Square
New York, New York 10036
(212) 421-4300
atp@kbg-law.com

*Attorneys for Plaintiff*
*Thomas Ferris*